UNITED STATES of America,
Plaintiff, Appellant,

v.

TWP 17 R 4, CERTAIN REAL
PROPERTY IN MAINE, et
al., Defendants, Appellees.

UNITED STATES of America,
Plaintiff, Appellee,

v.

TWP 17 R 4, CERTAIN REAL
PROPERTY IN MAINE, et
al., Defendants, Appellees.

**Patrick Cunan, Claimant, Appellant.**

**Nos. 91–1932, 91–1995.**

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1992.

Decided July 29, 1992.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., was on brief for plaintiff, appellant U.S.

Kevin E. Sharkey, with whom Kenna, Johnston, Craighead & Sharkey, P.A., was on brief for defendants, appellees.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

This is an appeal by the Government from an order entered by the District Court for the District of Maine dismissing its *in rem* complaint for forfeiture of certain real property consisting of 400 acres, located in Township 17, Range 4, County of Aroostook, in the State of Maine. For the reasons stated below we affirm in part and reverse in part.

## FACTS

The United States filed a civil complaint on October 23, 1990, seeking the forfeiture of three parcels of real estate, together with three rights of way,[1] under the provisions of 18 U.S.C. § 981(a)(1) and 21 U.S.C. § 881(a)(6).[2] The complaint alleged that the real property and rights of way were involved in money laundering transactions, in violation of 18 U.S.C. §§ 1956 or 1957, or constituted proceeds traceable to an illegal drug exchan℮ in violation of 21 U.S.C. §§ 801–971.

More specifically the complaint alleged that Richard J. DeCato, Jr. ("DeCato"), was involved in large-scale drug trafficking since 1981. It also alleged that DeCato received substantial amounts of cash from his illegal activities and invested it in numerous assets, including several pieces of real estate in Maine. It further alleged that on February 6, 1985, DeCato purchased five lots along the Bay Creuse Road in Township 17, Range 4, in Aroostook County, Maine, and that he bought a large strip of land, measuring 1,000 by 12,000 feet, along the south shore of Long Lake in the same community on March 27, 1986, together with three rights of way. Moreover, the complaint alleged that on January 14, 1988, DeCato purchased still another large tract of land, measuring 400 acres, in Township 17, Range 4. All of these purchases allegedly took place while DeCato was a fugitive from justice. According to the allegations in the complaint DeCato had no legitimate source of income to enable

---

1. Although the record is not entirely clear, the Government asserts that "the defendant properties are rural expanses of land deep within Aroostook County, with but one unoccupied cottage as the only structure." Government's brief, p. 1, footnote 2.

2. 18 U.S.C. § 981(a)(1) provides that:
   (a)(1) Except as provided in paragraph (2), the following property is subject to forfeiture to the United States:
   (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324 of title 31, or of section 1956 or 1957 of this title, or any property traceable to such property....

21 U.S.C. § 881 provides in pertinent part:
   (a) Property subject
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter....
(Emphasis added).

him to make such purchases of real estate. Further, the complaint alleged that DeCato used the name of Patrick Cunan while buying the properties. Thus, title to all of the defendant properties and rights of way was recorded in Patrick Cunan's name. No affidavit in support of the complaint was filed.

A warrant of "arrest *in rem*" was issued by the deputy clerk of the District Court for the District of Maine directing the U.S. Marshal to "arrest the property ... and detain the same in your custody until further order of the Court," and notifying "[a]ll persons claiming an interest in said property" to file claims with the court according to the provisions of Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.[3] There was no direction to the Marshal to actually seize the property and the Marshal who executed the warrant did not do so. Rather, the Marshal "posted"[4] the *in rem* defendants with process and filed a *lis pendens* in the Registry of Deeds for Aroostook County, informing title searchers of the pendency of the forfeiture action against each piece of real estate and against the rights of way. Process was also served upon both DeCato and Cunan. The Government did not schedule or request a hearing, either before or after securing the warrant of arrest for the defendant *in rem.*

Patrick Cunan ("Cunan"), filed a verified claim to the defendant property and rights of way on December 21, 1990 as the owner of record. Cunan argued first that the civil forfeiture complaint itself was defective because it failed to satisfy the particularity requirement of Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims.[5] Second, Cunan argued that the process was defective because the defendant property was "seized pursuant to a warrant of arrest *in rem*, but the warrant itself was not signed by a neutral and detached judicial officer who had previously determined that one or more affidavits, in support of the warrant, establish probable cause for forfeiture." Lastly, Cunan submitted that the Government's procedure also violated the Due Process

---

**3.** 18 U.S.C. § 981(a)(1) provides in pertinent part:

> (b)(2) Property shall be seized under paragraph (1) of this subsection upon process issued pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property....

(Emphasis added).

21 U.S.C. § 881 provides in pertinent part:

> (b) Seizure pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims; issuance of warrant authorizing seizure.
> Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property....

(Emphasis added).

**4.** The Government understands the term "posted" to mean that the deputy Marshal merely places a copy of the complaint and the clerk's warrant upon the defendant *in rem.* In the case of unoccupied land, process would consist of tacking the arrest warrant upon a tree. Where a structure is involved, the complaint and arrest warrant would be tacked on the outside. *See* Rule E(4)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Rule E(4)(b) reads as follows:

> (a) In General. Upon issuance and delivery of the process, or, in the case of summons with process of attachment and garnishment, when it appears that the defendant cannot be found within the district, the marshal shall forthwith execute the process in accordance with this subdivision (4), making due and prompt return.
> (b) Tangible Property. If tangible property is *to be attached or arrested, the marshal shall* take it into the marshal's possession for safe custody. If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal shall execute the process by affixing a copy thereof *to the property in a conspicuous place* and by leaving a copy of the complaint and process with the person having possession or the person's agent....

**5.** Rule E(2) reads as follows:

> (2) Complaint; Security.
> (a) Complaint. In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

(Emphasis added).

Clause of the Fifth Amendment because it did not include a pre-seizure hearing.[6]

On January 10, 1991, Cunan filed a motion to dismiss the complaint claiming that the complaint failed to meet the particularity requirement of the Supplemental Rules, and violated both the Fourth Amendment Due Process Clause and the Fifth Amendment Due Process Clause.

The district court found no violation of the Fifth Amendment or the particularity requirement of the Supplemental Rules. However, relying on this court's decision in *United States v. Pappas*, 613 F.2d 324 (1st Cir.1980) (en banc), the district court entered judgment dismissing the forfeiture complaint on Fourth Amendment and due process grounds. Adhering to the reasoning of this court in *Pappas*, the district court concluded that the Government must obtain a judicial finding of probable cause before "arresting" a property. *Pappas*, 613 F.2d at 328–29.

The United States and Patrick Cunan both appeal from the decision of the district court.

## LEGAL ANALYSIS

### I. Rule E(2)(a)

■ Cross-appellant Cunan submits that the complaint at issue does not contain sufficient particularity to satisfy Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. It is appellant's position that conclusory factual allegations, standing alone, do not provide the necessary detail to which a claimant is entitled in answering and investigating a civil forfeiture complaint. Thus, Cunan submits, the complaint should have been dismissed.

Rule E(2)(a), *supra* note 5, requires that a civil forfeiture complaint state the "circumstances from which the claim arises with such particularity that the defendant ... will be able ... to commence an investigation of the facts and to frame a responsive pleading." However,

> the complaint need not allege facts sufficient to support a 'reasonable belief that

specific property is tainted,' but facts sufficient to support 'a reasonable belief that the government could demonstrate probable cause' for finding the property tainted.

*United States v. One Parcel of Real Property*, 921 F.2d 370, 376 (1st Cir.1990) (citing *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 640 (1st Cir.1988)). We find that the complaint in the present case is more than sufficient to support a reasonable belief that the government, at trial, can make a probable cause showing that most, if not all, of the defendant property is connected to illegal drug proceeds. Further, the facts alleged in the complaint are sufficient to put the complainant on notice, and provide him enough information to allow him to investigate and respond to the complaint.

This circuit has explained the rationale of Rule E(2)(a) as follows:

> The requirement is not merely a procedural technicality, but a way of insuring that the Government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim.

*Pole No. 3172, Hopkinton*, 852 F.2d at 638. The facts alleged in the complaint fulfill the purpose of that statute as interpreted by *Pole No. 3172, Hopkinton*. A reasonable inference can be made from the text of the complaint that Richard J. DeCato, then a fugitive from justice, acting under an alias, purchased properties with money he derived from the trafficking of large amounts of controlled substances, as he was not in any other way employed during the time of the purchases. The complaint also alleges that these purchases took place between the years of 1985 and 1988. We hold that this information is sufficiently particular to put appellant Cunan on notice of the pending action, and to allow him to investigate and answer the complaint.

### II. The Fourth Amendment

The Government submits that *Pappas* is not controlling here because that case ad-

6. Default was entered against DeCato on January 9, 1991.

dressed only the actual seizure of an automobile without a warrant, and not whether a judicial determination of probable cause was required for the mere posting of a clerk's warrant, properly obtained under the Admiralty Rules. *See Pappas*, 613 F.2d at 326. Further, even if *Pappas* has some application here, the Government contends that Admiralty Rule C(3) and 21 U.S.C. § 881 were amended after the *Pappas* decision and now clearly and specifically demonstrate Congressional intent to exempt the Government from the necessity of securing a judicial warrant merely to post property in anticipation of forfeiture. Consequently, according to the Government, the *Pappas* interpretation of § 881 is no longer valid.

We note initially that in *Pappas* this court considered the question "whether the statute [Section 881] authorizes a warrantless seizure when the events providing the probable cause are remote in time from the actual seizure of the property and no exigent circumstances necessitate prompt action." *Id.* at 327. We concluded that it did not, stating that section 881 allowed a warrantless seizure "only when the seizure immediately follows the occurrence that gives the federal agents probable cause to believe that the automobile is subject to forfeiture under § 881(a) *and* the exigencies of the surrounding circumstances make the requirement of obtaining process unreasonable or unnecessary." *Id.* at 329–30 (emphasis in original).[7] The issues now before us are different ones, on which, as the government points out, *Pappas* is not determinative.

█ Here we are asked to determine whether the Fourth Amendment allows a deputy court clerk to issue an arrest warrant *in rem* pursuant to a civil forfeiture complaint, without a prior determination of probable cause by an independent and un-

attached judicial officer. The amended Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims clearly allows for such a warrant. That rule reads as follows:

> (3) Judicial Authorization and Process. *Except in actions by the United States for forfeitures for federal statutory violations*, the verified complaint and any supporting papers shall be reviewed by the court and, if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant and deliver it to the marshal for service.[8]

(Emphasis added). The commentary to the 1985 Amendment supports the conclusion that the amendment meant to clarify congressional intent to exclude from judicial review warrants issued pursuant to forfeiture actions brought by the United States for federal statutory violations. The commentary to the 1985 Amendment reads in pertinent part:

> The foregoing requirements for prior court review or proof of exigent circumstances do not apply to actions by the United States for forfeitures for federal statutory violations. In such actions a prompt hearing is not constitutionally required, *United States v. Eight Thousand Eight Hundred and Fifty dollars*, [461 U.S. 555] 103 S.Ct. 2005 [76 L.Ed.2d 143] (1983); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 [94 S.Ct. 2080, 40 L.Ed.2d 452] (1974), and could prejudice the government in its prosecution of the claimants as defendants in parallel criminal proceedings since the forfeiture hearing could be misused by the defendants to obtain by way of civil discovery

---

7. The seizure in *Pappas* occurred eleven months after the events giving rise to probable cause for forfeiture, and no exigent circumstances existed to excuse the failure to obtain a warrant. Thus the seizure was found to be in violation of § 881(b)(4) which requires that exigent circumstances exist before a seizure can be carried out without process, i.e., without first obtaining a warrant. *Pappas*, 613 F.2d at 329–30.

8. Rule C(3) was amended in 1985. The old text of the rule read as follows:

> Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service.

information to which they would not otherwise be entitled and subject the government and the courts to the unnecessary burden and expense of two hearings rather than one.

Appellant Cunan argues, however, that the Fourth Amendment is violated where a clerk of the court, rather than a judicial officer, issues a warrant of arrest *in rem* absent prior judicial review for probable cause.

The Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

As the Fourth Amendment mandates a finding of probable cause before the issuance of a warrant for a search or seizure, we must determine whether either a search or seizure took place here, and thus whether the Fourth Amendment is implicated. We answer both inquiries in the negative.

■ In the present case, the Government did not "seize" the real property. Instead, the Marshal's posting of the arrest warrant served as notice to the *in rem* defendants of the civil complaint filed against them. Appellant Cunan has not shown that he was denied access to the property in question, which would indicate an actual seizure of the property by the government. A seizure occurs when "there is some meaningful interference with an individual's possessory interests" in the property seized. *Maryland v. Macon*, 472 U.S. 463, 469, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1985) (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). We find no such "meaningful interference" here for the warrant executed in this case only gave notice to the

defendant *in rem*—it did not effect a seizure. Posting an *in rem* defendant is an appropriate method of notifying such a defendant of the action against it in much the same way an *in personam* defendant is served with a copy of a complaint. It is a fictional way of acquiring jurisdiction over the *res* in an *in rem* action.

■ A trial will take place at some future date where the Government will have to prove that there is probable cause to believe that the property is subject to forfeiture. *See One Parcel of Real Property*, 921 F.2d at 376 (civil forfeiture complaint need not allege facts sufficient to support probable cause, but facts to support a reasonable belief that government could show probable cause at trial) (citing *Pole No. 3172, Hopkinton*, 852 F.2d at 640). Actual seizure will occur only if the Government satisfies its burden of proof and the claimant is unable to refute the Government's evidence. *See* 19 U.S.C. § 1615.[9] Until then, the defendant *in rem* stands notified of the complaint against it and subject to limited restrictions. When a warrant for arrest *in rem* serves merely to bring the real property under the jurisdiction of the court it is not a "warrant" within the meaning of the Fourth Amendment such that the issuing authority must first make a probable cause determination. *United States v. Turner*, 933 F.2d 240, 245 (4th Cir.1991) (vehicle validly seized pursuant to automobile exception). Since no seizure took place, we do not find that the Fourth Amendment is implicated.

We conclude that the warrant issued here was in complete compliance with the Supplemental Rules for Certain Admiralty and Maritime Claims as mandated by § 881, and that the real property in question was properly posted, and not in contravention to the mandates of the Fourth Amendment.

### III. The Fifth Amendment

■ Lastly, it is the position of cross-appellant Cunan that in accordance with

---

**9.** Section 881(d) makes the burden of proof rules of 19 U.S.C. § 1615 applicable to the forfeiture of real estate. *See In re Newport Sav.* *and Loan Ass'n,* 928 F.2d 472, 479 (1st Cir.1991); *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 42 (1st Cir.1991).

the Fifth Amendment, a pre-deprivation hearing is required, even in the case of a forfeiture proceeding brought by the Government.[10]

While the posting of an arrest warrant might hinder an owner's ability to sell his/her property, we do not believe that it amounts to such a deprivation of property rights so as to warrant due process protection under the Fifth Amendment. As we conclude in the first part of this opinion, the posting of the property with the arrest warrant served as a notice to the *in rem* defendant that a civil complaint was filed against it, in much the same way an *in personam* defendant is served with a copy of the complaint. The posting of the property does not impede the owner's access to the property in any way, nor does it prevent the owner from otherwise disposing of the property. In addition, as the posting is merely a notice to the property, once the *in rem* defendant is "notified," the owner is free to tear down the arrest warrant thus giving rise to no other consequences.

Further, we are well aware of the Supreme Court decision in *Connecticut v. Doehr*, — U.S. —, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) and our subsequent decision in *Reardon v. United States*, 947 F.2d 1509 (1st Cir.1991), and we do not believe that our decision here presents a conflict with either Supreme Court or First Circuit precedent. In *Doehr*, the Supreme Court stated that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Doehr*, — U.S. at —, 111 S.Ct. at 2113. In *Reardon* we found that a federal lien, like the attachment lien in *Doehr*, did not deprive the landowner of possession and use of his property, but did cloud title, impairing the ability to alienate the property, tainting credit ratings and reducing the ability to obtain a mortgage. These we found to be significant property interests which were affected. *Reardon*, 947 F.2d at 1518–19. The posting of the property in this case, however, does not come close to the encumbrances presented by a lien or an attachment.[11] Posting a property grants the government no legal right over that property. It merely serves to notify the *in rem* defendant of the pending action and then the owner is free to tear the notice down. Hence we do not believe that the mere posting of a property requires the government to provide the *in rem* defendant with a prior hearing.

*Affirmed in part and reversed in part.*

---

**10.** The Fifth Amendment reads in pertinent part:

nor shall any person ... be deprived of life, liberty, or property, without due process of law....

**11.** Appellants do not argue that the filing of *lis pendens* without a prior hearing violates their due process rights under the Fifth Amendment. That issue is therefore waived, and we need not address it here.