STATE of Vermont v. Charles A. CRANNELL

[768 A.2d 1260]

No. 99-407

December 6, 2000. Appellant Charles Crannell appeals a decision of the Rutland District Court dismissing a motion for the recovery of property seized by a lawful warrant, or in the alternative, for damages for the value of the property. The court concluded that the State did not have possession of the property and that the court had no jurisdiction to consider damages. Appellant claims that the motion was properly before the district court and that it failed to conduct adequate hearings as to the whereabouts of his property. We affirm in part and reverse in part.

Appellant was convicted of murder in October 1995 and sentenced to life imprisonment with no possibility of parole in January 1997. We affirmed his conviction in January 2000. *State v. Crannell,* 170 Vt. 387, 750 A.2d 1002 (2000). At the time of his arrest, appellant was living in an apartment in Pennsylvania that was searched pursuant to a lawful warrant. Certain items of personal property were seized in conjunction with that search. In November 1997, before his conviction was finalized, appellant filed a motion in the district court for return of the seized property pursuant to V.R.Cr.P. 41(e). The

items he sought were (1) his 1985 Corvette automobile and all the items inside the car listed in a search warrant inventory; (2) a cellular phone; (3) his wallet; and (4) $250 in cash, a wedding ring, and two answer phones.

After a hearing in May 1998, the court ordered the State to return all of appellant's property except, upon offering sufficient proof, items that may have evidentiary value in the event of a retrial. The State returned appellant's wallet but represented that it was not in possession of the other items. Appellant returned to court arguing that the State had not complied with the court's order. Although the State protested that it was unaware of the location of the other items, the court issued another order in April 1999, requiring the State to offer a full accounting, including a chain of custody, for each of the remaining items. The order specified that the State's response was due in fourteen days. After the State failed to respond in that time, appellant moved for an order of contempt.

Several weeks later, the State filed an extensive affidavit prepared by the State's investigator. The affidavit addressed the State's position on the whereabouts of each of the items in appellant's original motion. The affidavit concluded that aside from the wallet, which was returned, the items either had not been seized in the first place or were no longer in the State's possession. The affidavit included excerpts from police reports relating to the search of appellant's apartment. In response, appellant filed another motion for contempt alleging that the State's response was insufficient under the court's order of April 1999 and requesting compensation for those items that could not be returned to him. The court held a final hearing in July 1999, at which it concluded, in one sentence, that the State's response was adequate and that the court did not have jurisdiction to investigate the issue any further. On appeal, appellant argues that the district

court does have jurisdiction under V.R.Cr.P. 41(e) to proceed with evidentiary hearings about the location of the items and that the court should award damages for unrecoverable items.

The parties devote much of their briefs to the issue of whether the district court has jurisdiction over appellant's motions. Specifically, the parties disagree as to whether V.R.Cr.P. 41(e) covers appellant's motion because his property was seized lawfully, while the rule appears to apply only to unlawful seizures.* We need not reach this issue, however, because the State concedes that the district court has jurisdiction over appellant's motion under its "inherent powers." Furthermore, as we indicated in *State v. Kornell*, 169 Vt. 637, 638, 741 A.2d 290, 291 (1999) (mem.), once a district court has granted a motion for return of property, the court retains ancillary jurisdiction to ensure the order is followed. This conclusion is consistent with that of federal courts operating under an older version of F.R.Cr.P. 41(e) that is nearly identical to the current Vermont rule. See, e.g., *United States v. Totaro*, 468 F. Supp. 1045, 1048 (D. Md. 1979) ("Although Rule 41(e) by its terms applies only to return of *illegally* seized evidence . . . courts have both the jurisdiction and the duty to order the return of seized evidence to its rightful owner . . . once the need for the evidence has terminated.") (emphasis in original).

Indeed, we read the court's decision in July 1999 that it did not have jurisdiction

narrowly to mean only that it did not have authority to order the State to pay compensation for any items that were lost or destroyed by the State. We agree. Statutorily, the district court has a very limited civil jurisdiction. See 4 V.S.A. § 437. The district court's ancillary jurisdiction to order return of property is based in equity, *Kornell*, 169 Vt. at 638, 741 A.2d at 291, and should not extend to actions for damages. Therefore, any motion seeking a remedy at law for seized property no longer in the State's possession properly belongs in superior court. See 4 V.S.A. § 113 (jurisdiction of superior court); see also *United States v. Totaro*, 472 F. Supp. 726, 730 (D. Md. 1979) (federal district court's ancillary jurisdiction over Rule 41(e) motions does not extend to claims for damages).

Thus, the real question before us is whether the State's affidavit is sufficient to comply with the court's orders of May 1998 and April 1999. Because district courts "generally use caution and restraint before exercising ancillary jurisdiction," *Kornell*, 169 Vt. at 638, 741 A.2d at 291 (internal quotations and citations omitted), and because of the largely factual nature of the inquiry, we will not disturb the court's decision absent an abuse of its sound discretion. See *State v. Ives*, 162 Vt. 131, 142, 648 A.2d 129, 135 (1994) (we will not reverse a trial court's evidentiary rulings unless there was an abuse of discretion); *Belock v. State Mut. Fire Ins. Co.*, 106 Vt. 435, 439, 175 A. 19, 21 (1934) (motion to set aside verdict as against the evidence reviewed for abuse of discretion).

The court concluded that for each of the items that appellant listed in his motions, the State's affidavit adequately demonstrated that the State either did not have the item in the first place, or subsequently no longer possessed the item. We take each item in turn.

Among the items seized in Pennsylvania was a 1985 Corvette in appellant's

---

* V.R.Cr.P. 41(e) provides:

A person aggrieved by an unlawful search and seizure may move the court to which the warrant was returned or the court in the county or territorial unit where property has been seized without warrant for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized.

possession. Appellant claims that the purchase price was loaned to him by Transportation Leasing, Inc., but that he actually owned the car. The State's affidavit states that the car was leased from Transportation Leasing and that the car was returned to the lessor. While appellant disputes the ownership status of the Corvette, this argument is immaterial. The title to the car is held by Transportation Leasing, Inc., and thus the State acted properly when it returned the car to its lawful owner. Any dispute between appellant and Transportation Leasing is not before this Court.

Appellant also seeks the return of all the items inside the Corvette at the time of its seizure. The Vermont State Police completed an extensive inventory of the car after the seizure. The affidavit claims that most items were not taken into custody and remained with the car. After the car was transported to Vermont, however, certain items were removed from the car for further investigation. The affidavit tersely concludes that the State "will *not* return any such items and will continue to hold them as evidence" (emphasis in original) because they have potential evidentiary value in the event of a retrial. In its order of May 1998, the court specified that:

> [T]he state may file an affidavit specifying any of the seized property which it reasonably believes to have evidentiary value in the event of a retrial, together with the basis for its belief. The defense may respond within ten days of the state's filing. The court will thereupon issue a ruling as to the state's claim for continued possession of specified property.

Even if the State's affidavit satisfies the court's requirement that the State justify the evidentiary need for the item, and we doubt that it does, the court did not follow its own mandate that it issue a specific ruling on the State's claim to the item. There has been no showing by the State that the items in its custody have any evidentiary value and no finding by the court to that effect either. Appellant should at least be entitled to the procedure laid out by the court in its May 1998 order for the items removed from the Corvette.

Appellant's cell phone is also the subject of controversy. Appellant claims that his cell phone was seized from his apartment and sent to MCI for testing. The State's affidavit claims that no cell phone was ever seized. The evidence submitted in support of this claim is an excerpt from the police report from October 22, 1992. Appellant alleges, however, that police returned the next day to his apartment, seized the phone and submitted it to employees from MCI to determine if the phone was used to make certain phone calls. Although the documents submitted with the briefs provide no support for appellant's claims, other documents in the record do. Examination of the record reveals at least fifteen pages of material concerning the investigation of a cell phone. These documents appear to relate to an investigation to determine whether a phone number could be altered or switched to another number. The documents include: notations of cell phone numbers and chip information; a subpoena to MCI Security requesting information on appellant's phone credit card number; emails among MCI employees, including the one named in appellant's allegations, discussing how appellant could have made a call from his cell phone and make it appear as if the call originated from a different number; and a lengthy memo to the MCI employee named in appellant's allegations discussing specifically a cell phone observed by police when they searched his apartment.

The number and content of these documents indicate that the cell phone was likely a serious matter of investigation. Indeed, certain phone calls made by appellant were a significant issue in the criminal case. *Crannell*, 170 Vt. at 403, 750 A.2d at 1016. We hold, therefore, that appellant's allegations and the corroborating evidence from the record are a sufficient showing that the cell phone may have been seized by police to require the State to respond. The affidavit offered by the State claims only that the phone was not seized on October 22, but does not address the possibility that the phone was seized at a later date, nor does it explain the investigatory materials found in the record. Because appellant has raised a significant question as to whether the police seized his phone, the court abused its discretion in accepting the State's affidavit on this point.

As for the remaining items, appellant states only that two answer phones, a wedding ring, and $250 in cash were missing from his apartment after the initial search and seizure. Unlike the allegations regarding the cell phone, however, appellant offers no specific claims regarding the items' location. In fact, appellant can offer no evidence that these items were ever in the State's possession, or that they existed at all. The threshold burden remains on appellant to prove that the State at some time seized the items before the State must offer an explanation as to the items' whereabouts. Given that appellant failed to meet this evidentiary hurdle, we cannot say that the court abused its discretion in finding the State's affidavit offered an adequate explanation as to the location of these items.

We therefore remand the court's decision for further proceedings consistent with this opinion.

*Affirmed in part, reversed and remanded in part.*